UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DERRICK NEAL,** *Plaintiff* § § § | |
| v. § § § | No. 1:23-cv-759-RP |
| **WILLIAMSON COUNTY AND CITIES HEALTH DISTRICT, et al.,** *Defendants* § § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Williamson County and Cities Health District ("WCCHD"), Williamson County Judge Bill Gravell, and William Gravell, Jr.'s ("Judge Gravell," and with WCCHD "Defendants") motions to dismiss, Dkts. 47, 52, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that WCCHD's motion, Dkt. 47, be granted in part and denied in part and Judge Gravell's motion, Dkt. 52, be granted.

### I.   BACKGROUND

Plaintiff Derrick Neal filed this lawsuit based on the events leading up to his resignation from his position as executive director of the WCCHD. Dkt. 41, at 3-11. Neal, a Black man, alleges that he was constructively discharged from this position due to a racially hostile work environment. *Id.* at 11. Neal's complaint centers on the questionable behavior of one individual, Judge Bill Gravell, Jr., who has been sued

1

in his individual and official capacities in this lawsuit. *See id.* According to Neal's complaint, Judge Gravell had "some level of authority" over WCCHD's board of directors—who select the executive director—because he was the presiding officer of the Williamson County Commissioners' Court. *Id.* at 4.

Neal first became aware that Judge Gravell "might be hostile to the interests of African Americans" when he learned, through news reports, that Judge Gravell had "liked" a Facebook post about the mutilation of a Black football player. *Id.* at 5. Shortly thereafter, in 2020, Judge Gravell was designated the incident commander for Williamson County during the COVID-19 emergency response period. *Id.* As incident commander, Judge Gravell directed WCCHD to have no communications with cities within Williamson County during the pandemic. *Id.* at 5-6. Judge Gravell's unilateral instruction interfered with Neal's ability to perform his job duties—Neal claims this interference was "a racially motivated directive intended to cause" Neal to fail at this role as executive director of WCCHD. *Id.* at 6.

Later that year, Neal learned through news reports that Williamson County sheriff's deputies had killed a Black motorist for failing to dim his headlights and hindered any investigation into the incident—a news story that made Neal fear for his personal safety. *Id.* at 6-7. In the meantime, Neal received a positive review from the WCCHD board of directors for his performance as executive director, and during this same meeting informed the board that Judge Gravell had created a racially hostile work environment where Neal found it difficult to perform his job. *Id.* at 7. Neal claims that the board made no inquiry into his concerns about Judge Gravell.

*Id.* After Neal lodged his complaint about Judge Gravell, their relationship deteriorated—with Judge Gravell allegedly yelling at Neal during WCCHD meetings. *Id.* at 8. One member of the board told Neal that Judge Gravell had privately criticized Neal, but that Judge Gravell's comments were "so inappropriate that she could not bear repeating them given their distasteful racial nature." *Id.* This prompted Neal to once again lodge a complaint against Judge Gravell "about the racially hostile work environment." *Id.*

Following Neal's second complaint, Judge Gravell targeted Neal by instructing him to not administer COVID-19 vaccines during the Christmas holiday week and then publicly criticizing Neal for not administering the vaccines during that week while first responders continued to work. *Id.* at 9. Another member of WCCHD then informed Neal that Judge Gravell had "called her later at night" to make racially derogatory comments to her about Neal—and opined that Judge Gravell was likely repeating his race-based "tirade" to other members of WCCHD. *Id.* Neal then filed a formal written complaint of race discrimination with the WCCHD board. *Id.* Following Neal's written complaint, Judge Gravell sent Neal an email stating that Neal's "disagreement and contained lack of respect for the County and the Governor is not healthy or wise," which Neal found "ominous and threatening." *Id.* at 10. In fear for his safety, Nealt decided to resign from his position—which he alleges was in fact a constructive discharge based on the racially hostile work environment. *Id.* at 11.

After filing a complaint with the Equal Employment Opportunity Commission and receiving a right to sue letter, Neal timely filed this lawsuit accusing Defendants of violating his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981 and 42 U.S.C. §1983. *Id.* at 3, 11-20. Defendants filed motions to dismiss Neal's complaint under Rule 12(b)(6). Dkts. 47, 52.

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

### A.   WCCHD Motion to Dismiss

Neal brought claims against WCCHD for race discrimination, retaliation, and constructive discharge in violation of Title VII, as well as claims of discrimination and retaliation under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.[1] Dkt. 41, at 11-20.

---

[1] Because section 1983 "is not itself a source of substantive rights" but rather "a method for vindicating federal rights elsewhere conferred," the undersigned construes Neal's section 1981 claims as having been brought pursuant to section 1983. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979); *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001) (noting that "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981").

5

WCCHD moves to dismiss Neal's claims against it because he complains of conduct by Judge Gravell, who was not Neal's employer and whose actions, WCCHD argues, cannot be imputed to WCCHD because it is a separate entity from Williamson County. Dkt. 47, at 5. Neal responds that courts have interpreted the statutes under which he seeks relief to require employers to prevent third parties, like Judge Gravell, from harassing employees within the workplace. Dkt. 53, at 5.

Neal's Title VII claims for discrimination, retaliation and constructive discharge based on a hostile work environment raise an unusual theory for liability since the allegedly discriminatory actions were taken by Judge Gravell—a third party not under WCCHD's control. WCCHD cites *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 325 (5th Cir. 2019), *as revised* (Feb. 7, 2019), for the proposition that Title VII only prohibits "harassing conduct" by an employer. Dkt. 47, at 7. Yet in *Gardner*, the Fifth Circuit confirmed that "nonemployees can be the source of the harassment" by reversing an entry of summary judgment for a nursing home where a former nurse had brought Title VII claims based on the actions of a patient. 915 F.3d at 322, 327 (noting that "liability when such a [Title VII] claim is based on the behavior of someone other than a supervisor requires showing that the employer knew or should have known of the hostile work environment but failed to take reasonable measures to try and stop it").

Courts have recognized—in the context of sexual-harassment claims—the potential for employers to incur Title VII liability for conduct by nonemployees who affect the workplace. *See, e.g., Whitaker v. Carney*, 778 F.2d 216, 221 (5th Cir. 1985)

6

(noting that Title VII may confer "an obligation on employers to see to it that their employees are free of sexual harassment or discrimination" due to "actions of nonemployees *in* the workplace"); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) ("We have held that an employer may be responsible for sexual harassment based upon the acts of nonemployees."); *Henson v. City of Dundee*, 682 F.2d 897, 910 (11th Cir. 1982) ("The environment in which an employee works can be rendered offensive in an equal degree by the acts of supervisors, coworkers, or even strangers to the workplace[.]" (cleaned up)).[2] Some courts have extended this reasoning to hostile work environment claims based on racial discrimination. *See, e.g., Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014) (reversing entry of summary judgment on Title VII race-based hostile work environment claim where plaintiff complained of harassment by third-party sales representative).

Here, Neal's Title VII claims rest on his allegation that WCCHD "created and maintained a hostile work environment" by failing to do anything in response to Neal's complaints of Judge Gravell's race-based harassment. Dkt. 41, at 7, 11-12. While WCCHD's argument that it did not exercise control over Judge Gravel is well-taken, Dkt. 47, at 8-12, WCCHD may nonetheless be liable for its failure to do anything in response to Neal's repeated charge that "he was working in a racially

---

[2] In this context, courts have stated that third-party harassment may be imputed to an employer where "the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 229 (S.D.N.Y. 2022) (citation omitted); *see also Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005) ("An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it."); *Gardner*, 915 F.3d at 327.

7

hostile work environment created by" Judge Gravell. Dkt. 41, at 7-9; *Gardner*, 915 F.3d at 327; *Henson*, 682 F.2d at 910 ("The capacity of any person to create a hostile or offensive environment is not necessarily enhanced or diminished by any degree of authority which the employer confers upon that individual."). While discovery may later reveal that WCCHD complied with Title VII in responding to Neal's complaints of a hostile work environment, at this stage WCCHD has not demonstrated that Neal's Title VII causes of action—though based on a somewhat novel legal theory—do not state claims for relief that are plausible on their face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Neal's Title VII claims against WCCHD should not be dismissed at this time.

WCCHD argues that Neal's section 1981 claims should also be dismissed because they similarly arise from Judge Gravell's conduct. Dkt. 47, at 7-8. WCCHD argues that under *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006), section 1981 claims require "that defendant discriminate or adopt the policy that results in discrimination." Dkt. 47, at 7-8. The Fifth Circuit did not address any section 1981 claims in *Pacheco*, however, specifically noting that "[o]nly the Title VII claims … are at issue here." *Pacheco*, 448 F.3d at 786 n.4. WCCHD cites no other authority in support of its assertion that Neal's section 1981 claims should be dismissed because of Judge Gravell's involvement. *See* Dkts. 47; 54. Neal does not address the issue of section 1981 liability in the context of third-party discrimination in his response. *See* Dkt. 47.

8

Section 1981 claims, however, generally require an allegation of purposeful discrimination on the part of the defendant—rather than the negligence standard applied to Title VII cases where plaintiff seeks to impute liability on an employer for third-party harassment. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) (holding that section 1981 "can be violated only by purposeful discrimination"); *cf. Freeman*, 750 F.3d at 423 ("[A]n employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." (citation omitted)). The Supreme Court has even found that Congress did not intend for section 1981 to "make [employers] the guarantors of the workers' rights as against third parties who would infringe them." *Gen. Bldg. Contractors*, 458 U.S. at 396; *see also FPL Food, LLC v. U.S. Dep't of Agric.*, 671 F. Supp. 2d 1339, 1357 (S.D. Ga. 2009) ("Section 1981 does not require employers to protect its employees against discrimination by third parties[.]" (citing *Gen. Bldg. Contractors*, 458 U.S. at 395-97)).

Despite Neal's conclusory allegations that WCCHD discriminated against him because of his race, he does not allege any facts that would support the conclusion that WCCHD acted intentionally—rather than negligently—in failing to pursue his complaints of a hostile work environment created by Judge Gravell. *See* Dkt. 41; *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Because section 1981 does not

9

contemplate liability for employers based on the discriminatory actions of third parties, and Neal has not alleged any purposeful discrimination on the part of WCCHD, the undersigned recommends that Neal's section 1981 claims against WCCHD be dismissed.

### B.     Judge Gravell's Motion to Dismiss

Neal brought claims against Judge Gravell in his individual and official[3] capacities for discrimination and retaliation in violation of 42 U.S.C. §1981 and 42 U.S.C. § 1983.[4] Dkt. 41, at 14-17. Judge Gravell offers various bases for dismissal of Neal's claims against him, *see* Dkt. 51, including Judge Gravell's status as a third party to Neal's employment contract with WCCHD. *Id.* at 4-5. In response, Neal argues that courts have recognized third-party liability for interference with a plaintiff's rights under section 1981. Dkt. 56, at 7 (citing *Faraca v. Clements*, 506 F.2d 958, 959 (5th Cir. 1975)). In *Faraca*, the Fifth Circuit acknowledged that "courts in their broad interpretation" of section 1981 "have held that a third party's interference with those rights … will subject such a person to personal liability." *Faraca*, 506 F.2d at 959. Yet as Judge Gravell points out, Dkt. 57, at 4, the Fifth Circuit recently clarified that *Faraca* only contemplates section 1981 liability where the "third party"

---

[3] Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," the undersigned construes Neal's official-capacity claims against Judge Gravell to have been brought against Williamson County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[4] As noted above, *supra* note 1, section 1983 "is not itself a source of substantive rights" but rather "a method for vindicating federal rights elsewhere conferred," and as such, the undersigned construes Neal's section 1981 claims against Judge Gravell as claims brought pursuant to section 1983. *Albright*, 510 U.S. at 271 (citing *Baker*, 443 U.S. at 144 n.3).

and the contracting party are "essentially one and the same." *Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 933 (5th Cir. 2021) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)).

While Neal alleged that Judge Gravell had "considerable influence" over WCCHD, he does not argue that WCCHD and Judge Gravell are "essentially one and the same" for the purposes of establishing "third-party" liability under section 1981—and in fact explicitly disclaims any need to include factual allegations about "how the government entity is one and the same as the plaintiff's employer." Dkts. 41, at 4; 56, at 5-8, 11. But given that binding case law requires WCCHD and Judge Gravell to be "essentially one and the same" for liability to attach to Judge Gravell under section 1981, even accepting Neal's factual allegations as true, he has not stated a claim against Judge Gravell upon which relief could be granted. *Perry*, 990 F.3d at 933; *Iqbal*, 556 U.S. at 678. This flaw in Neal's pleading as to his individual-capacity claims against Judge Gravell applies equally to Neal's official-capacity claims against Judge Gravell—construed as against Williamson County—since nothing in the complaint suggests that WCCHD and Williams County are "essentially one and the same." *See* Dkt. 41.[5] The undersigned recommends that Judge Gravell's motion to dismiss be granted.

---

[5] WCCHD attached to its motion to dismiss copies of the relevant cooperative agreements under which it operates—demonstrating that WCCHD is not a department of Williamson County but rather an independent entity comprised of members appointed by the county as well as the cities of Cedar Park, Georgetown, Round Rock, and Taylor. Dkts. 47-1, at 2; 47-2; *Causey*, 394 F.3d at 288 ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** WCCHD's motion to dismiss, Dkts. 47, and **GRANT** Judge Gravell's motion to dismiss, Dkt. 52. Regarding WCCHD's motion to dismiss, Dkt. 47, the undersigned recommends that the District Judge deny the motion as to Neal's Title VII claims and grant the motion as to Neal's section 1981 claims.

## V. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED November 6, 2024.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE